IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| LINNE MERCK, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| S.Y.A.H., LLC d/b/a GUILFORD IMMEDIATE CARE; AYHAM Y. HADDAD and SINAN HADDAD, | : : : | CIVIL ACTION NO. 1:19-CV-1279-LMM |
| | : | |
| Defendants. | : | |

## ORDER

This case is before the Court on Defendants' Motion to Enforce Settlement Agreement [13]. After due consideration, the Court enters the following Order:

### I.  BACKGROUND

This matter arises out of a dispute as to whether the parties reached a final settlement agreement that included a general release. On January 25, 2019, Plaintiff's counsel sent a demand letter to Defendants' counsel, claiming that Defendants were liable for violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq* ("FLSA"), breach of contract, and false tax filings. Dkt. No. [13-2] at 1-2. Based on these allegations, Plaintiff's counsel claimed that his client was entitled to $67,813.42. Id. at 2. Defendants subsequently retained their current counsel. Dkt. No. [13] at 4. Plaintiff ultimately filed her Complaint on March 20,

2019, asserting the claims listed in the demand letter as well as an additional claim for retaliation under the FLSA. Dkt. No. [1].

The parties' attorneys then engaged in a series of communications in an effort to settle the case on behalf of their clients. First, on April 10, 2019, Defendants' counsel responded to Plaintiff's' January 25, 2019 demand letter with an offer of $50,293.35, to be paid out over six months, "in exchange for a general release of all Defendants and their agents." Dkt. No. [13-3] at 2. Plaintiff's counsel responded via email on May 3, 2019 with a counter-offer of an $80,000 lump-sum payment. Dkt. No. [13-4] at 1.

After several more email exchanges[1], Plaintiff's counsel sent an email on May 28, 2019 with the following offer:

(1) Total settlement of $72,00, plus up to $500 in costs. (Actual costs will be filing fee plus service fee – we will provide invoices.)
(2)  First Payment of $43, 200 due within 5 days of Court approval of settlement. (Check payable to Linne Merck.)
(3) W-2 reflecting gross income of $43,200 due simultaneously with first payment

---

[1] Specifically, on May 15, 2019, Defendants' then, through their counsel, raised their settlement offer to $60,000, to be paid in six installments. Dkt. No. [13-5] at 1. Plaintiff's counsel responded that same day that he would take the offer to his client, but Plaintiff had previously indicated that she would not consider an offer without a lump-sum payment. See id. On May 16, 2019, Plaintiff's counsel emailed Defendants' counsel that his client would agree to a $78,000 lump-sum settlement and a corrected W-2 form. Dkt. No. [13-6] at 3. Defendants' counsel responded that day by agreeing to offer proof of a corrected W-2 form and raising its settlement offer to $62,000, to be paid out over four months. Id. at 2. On May 21, Plaintiff's counsel replied via email stating "$75,000. Lump sum-no payment plan." Id. In response, Defendants' counsel offered $66,000, to be paid out over three months. Id. at 1.

(4) Second payment of $28,000, plus up to $500 in costs due within 30 days of Court approval. (Check payable to Parks, Chesin & Walbert).
(5) 2018 W-2 corrected to deduct Ms. Merck's final paycheck and ensuring no other excessive income reported.
(6) Settlement agreement reflecting these terms must be prepared and executed within 7 days.

Dkt. No. [13-7] at 1. Defendants accepted Plaintiff's settlement offer, via counsel, that same day. Id. The parties then filed a joint motion to stay proceedings pending the filing of a motion to approve their FLSA settlement. Dkt. No. [10]. The Court granted the parties' motion on May 29, 2019. Dkt. No. [11].

On May 30, 2019, Defendants' counsel sent a draft of the settlement agreement to Plaintiff's counsel. Dkt. No [13-9] at 1. The draft included several paragraphs setting forth the terms of Plaintiffs' general release. Id. at 4. Plaintiff's counsel made several changes to the proposed draft; his changes did not include any objections to the general release. See Dkt. Nos. [13-9; 13-10]. Defendants' counsel accepted those changes on the morning of June 3, 2019, stating "Your changes are acceptable to me . . . . I will forward this to my client for review and approval today." Dkt. No. [13-11] at 1.

Later that afternoon, Plaintiff's counsel emailed Defendants' counsel that his client had some questions about the settlement agreement and that he "may have another suggestion or two on the actual language." Dkt. No. [13-12] at 1. Defendant's counsel responded "[t]hat is fine." Dkt. No. [14-4] at 1. The next day, June 4, 2019, Plaintiff's counsel emailed Defendants' counsel that his client would not sign a general release. Dkt. No. [13-13] at 2. Defendants' counsel

3

responded that he believed the parties had a binding settlement agreement and attached a copy of the agreement signed by Defendants to his email. Dkt. No. [13-14] at 1. On June 7, 2019, Plaintiff's counsel reiterated that Plaintiff would not agree to the general release of claims. Dkt. No. [13-15] at 1. Defendants now move to enforce the settlement agreement that they contend the parties reached. Dkt. No. [13].

## II.   LEGAL STANDARD

By virtue of its inherent power, a district court may "summarily enforce settlement agreements entered into by parties litigant in a pending case." Ford v. Citizens & Southern Nat'l Bank, 928 F.2d 1118, 1121 (11th Cir. 1991). State law governs whether to enforce an alleged agreement to settle a pending lawsuit. Lexington Nat'l Bail Svcs., Inc. v. Spence, 1:03–cv–2904–JEC, 2007 WL 951767 at *4 (N.D. Ga. Mar. 28, 2007) (citing Hayes v. Nat'l Serv. Indus., 196 F.3d 1252, 1254 (11th Cir. 1999)). As Georgia courts repeatedly have emphasized, "[t]he law favors a settlement of differences and a compromise of disputed claims between parties." See, e.g., King v. Lewis, 4 S.E.2d 464, 468 (Ga. 1939) (quoting Tyson v. Woodruff, 33 S.E. 981, 983 (Ga. 1899)); Cumberland Contractors, Inc. v. State Bank & Trust Co., 755 S.E.2d 511, 518 (Ga. App. 2014) ("[T]he law favors compromise, and when parties have entered into a definite, certain, and unambiguous agreement to settle, it should be enforced." (quoting DeRossett Enters. v. Gen. Elec. Capital Corp., 621 S.E.2d 755, 756 (Ga. App. 2005)). Under Georgia law, an agreement to settle a case must meet "the same requisites of

formation and enforceability as any other contract." Earthlink, Inc. v. Pope, 1:03–cv–2559–JOF, 2007 WL 788427 at *2 (N.D. Ga. Mar. 14, 2007) (citing Wong v. Bailey, 752 F.2d 619, 621 (11th Cir. 1985)). When parties have entered into a definite settlement agreement, "the trial court should make the agreement the judgment of the court, thereby terminating the litigation." Topa Ins. Co. v. Acree, 433 S.E.2d 312, 314 (Ga. App. 1993).

### III. DISCUSSION

As set forth above, Defendants posit that the parties have an enforceable settlement agreement that includes a general release. Dkt. No. [13] at 2. Defendants now seek to enforce that agreement. Id. Plaintiff responds that Defendants' motion seeks to impose on Plaintiff terms of a draft settlement agreement to which she never agreed. Dkt. No. [14] at 1. The Court agrees with Plaintiff in this regard.

To begin, Defendants' argument that Plaintiff should be "judicially estopped" from claiming that no settlement has been reached—based on the representations in the parties' Joint Motion to Stay Proceedings—is without merit. Dkt. Nos. [13] at 20-21; [15] at 1-2. The parties submitted their Joint Motion to Stay Proceedings on May 28, 2019, in which they stated that "a settlement has been reached today." Dkt. No. [10] at 2. At that point, Defendants had accepted the settlement offer made by Plaintiff's counsel via email on May 28, 2019. See Dkt. No. [13-7] at 1. That email included six specific terms but made no reference to a general release. See id. Indeed, the general release was not part

of the settlement agreement at that time because, although Defendant's initial counteroffer on April 10, 2019 included a general release, that counteroffer was rejected by Plaintiff on May 3, 2019—when Plaintiff made another counteroffer. See Dkt. Nos. [13-3; 13-4]. The terms of that counteroffer were not "unconditional and identical" to the terms of Defendant's offer and therefore did not amount to an acceptance. Anderson v. Benton, 673 S.E.2d 338, 341 (Ga. Ct. App. 2009). Thus, contrary to Defendants' belief, Plaintiff is not now taking a position "directly contrary" to the one she took on May 28, 2019 because, at the time the parties filed their joint motion to stay, the parties had agreed to settle the case on the terms set forth in Plaintiff's counsel's email. See Dkt. No. [13-7] at 1. In other words, that Plaintiff now opposes enforcement of additional terms as part of the parties' settlement Agreement is not inconsistent with Plaintiff's previous representations to the Court that the parties had reached a settlement.[2]

Nevertheless, Defendant argues that Plaintiff's attorney had apparent authority to bind her to the general release and that he did so by (1) negotiating

---

[2] Nor is the Court persuaded by Defendants' reliance on Wong v. Bailey as support for their judicial estoppel argument. Dkt. No. [13] at 19-20 (citing 752 F.2d 619, 620 (11th Cir. 1985)). There, the Eleventh Circuit affirmed the district court's enforcement of the parties' settlement agreement because the plaintiff's attorney orally agreed to a settlement offer and "counsel for both parties understood that the standard procedure, including the insertion of a general release clause, would be followed in finalizing the settlement." Id. Here, Plaintiff's counsel's May 28, 2019 email indicated that he was only authorized to settle on the terms listed in the email—thereby foreclosing any argument that the parties understood a general release clause would be included in finalizing the settlement. See Dkt. No. [13-7] at 1.

6

the settlement without objecting to the general release proposed by Defendant on April 10. 2019; and, (2) making changes to Defendants' proposed draft without addressing the general release language. See Dkt. No. [13] at 19.

The Court has already rejected Defendant's argument that the general release was included as part of the negotiations following Defendant's April 10, 2019 offer. Moreover, even assuming Plaintiff's counsel somehow consented[3] to a general release, Defendants' argument with respect to apparent authority fails. Unlike in the cases upon which Defendant relies, the attorneys in this matter consistently informed one another throughout negotiations that their authority to offer and/or accept settlement terms was limited by their respective clients' approval. See, e.g., Dkt. No. [14-2] at 1. To illustrate, in Charter Oak Fire Insurance Company v. Patterson, the court enforced a settlement agreement over the defendant's objections that they had not personally agreed to the mutual release because the defendant's counsel had e-mailed the plaintiff's counsel stating that the "[defendants] will agree to settle the claims . . . on the terms we've

---

[3] To that end, the Court is not convinced that the parties ever agreed on the final terms of the settlement agreement. On June 3, 2019, after receiving Plaintiff's counsel's edits on the draft agreement, Defendants' counsel wrote that he would "forward this to my client for review and approval today." Dkt. No. [13-11]. The record demonstrates that Defendants did not approve the draft agreement until *after* Plaintiff's counsel had objected to the general release on his client's behalf. See Dkt. Nos. [13-13] at 2-3; [13-14] at 1. As such, it appears that the settlement agreement was never finalized. See Greene v. Keener, 402 S.E.2d 284, 285 (Ga. Ct. App. 1991) ("An offer to a contract may be withdrawn by the offeror before its acceptance by the offeree."). Even so, as discussed *infra*, it should have been clear to Defendants' counsel that Plaintiff's counsel lacked any authority to agree to terms beyond those set forth in the May 28, 2019 email.

discussed." 46 F. Supp. 3d 1361, 1371 (N.D. Ga. 2014). The Court reasoned that the opposing party was entitled to rely on the apparent authority of the defendant's attorney to enter into a settlement because the defendant had never communicated any limitation on their attorney's authority to enter into a settlement. See id. at 1373.

By contrast, here, Plaintiff's counsel consistently represented throughout the negotiations that his authority to enter into a settlement was limited by his client's approval. For example, on May 23. 2019, Plaintiff's counsel emailed Defendant's counsel that he was "trying get more authority." Dkt. No. [14-2] at 1. The next day, Plaintiff's counsel again emailed Defendants' counsel explicitly stating, "[a]s of now, I have no further authority." Dkt. No. [14-3] at 1. Indeed, when Plaintiff's counsel sent the offer on May 28, 2019, he wrote, "I am authorized to make the *following* offer." Dkt. No. [13-7] at 1 (emphasis added). Moreover, before Defendants signed the alleged agreement, Plaintiff's counsel emailed Defendants' counsel that his client had some questions about the settlement agreement and that he "may have another suggestion or two on the actual language." Dkt. No. [13-12] at 1. To which Defendant's counsel responded, "[t]hat is fine." Dkt. No. [14-4] at 1. Thus, unlike in Patterson, in this case it was clear from the communications between the parties that Plaintiff's counsel's authority was limited, and he lacked power to assent to terms beyond the scope of what Plaintiff authorized him to offer—that is, the terms in the May 28, 2019

email. Cf. 46 F. Supp. at 1373. Defendants' Motion to Enforce Settlement Agreement [13] is therefore **DENIED.**[4]

IV.  **CONCLUSION**

In light of the foregoing, Defendants' Motion to Enforce Settlement Agreement [13] is **DENIED.** The parties are **ORDERED** to file a status report within seven (7) days of entry of this Order.

**IT IS SO ORDERED** this 16th day of August, 2019.

_____
**Leigh Martin May**
**United States District Judge**

---

[4] Having denied Defendants' motion, the Court also denies their request for attorneys' fees. See Dkt. No. [13] at 24-25.